UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

       - v. -

11 Cr. 161 (JSR)

SON NGOC NGUYEN

              Defendant.

-------------------------------------------------------------X

## SENTENCING MEMORANDUM

Douglas M. Schneider
Summers & Schneider, P.C.
147 Prince Street, 2nd Floor
Brooklyn, New York 11201
917-512-6633
douglas@summersandschneider.com

Attorneys for Son Ngoc Nguyen

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. i

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND..................................................................................2

      **A. Nguyen's Minimal Role In The Conspiracy** ..............................................4

      **B.  Nguyen's Cooperation With The Government**...........................................5

ADVISORY GUIDELINE RANGE........................................................................6

      **A. Adjustment For Role in the Offense**............................................................6

            i.    *Improper Enhancement For Abuse of Trust*.....................................6

            ii.   *The PSR Fails to Account for Nguyen's Minimal Participation*.................. 8

      **B. The Loss Did Not Exceed $5,000**.................................................................10

NGUYEN SHOULD BE GRANTED A DOWNWARD DEPARTURE...........................11

     **A. Nguyen Provided Substantial Assistance To The Government**......................11

     **B. Nguyen's Conduct Was Aberrant**.................................................................13

     **C. Nguyen Has Been Sufficiently Deterred**.......................................................13

CONCLUSION.....................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*U.S. v. Adams*, 03- CR-1368, 2006 U.S. Dist. LEXIS 5606 (E.D.N.Y. January 30, 2006) ....... - 7 -

*U.S. v. Corbin*, 729 F. Supp. 2d 607, 613 (S.D.N.Y.) ............................................................. - 8 -

*U.S. v. Cotto-Lopez*, 379 Fed. Appx. 101, 103 (2d Cir. 2010) ............................................. - 8, 9 -

*U.S. v. Davis*, 07 CR 727, 2008 U.S. Dist. LEXIS 44030 (S.D.N.Y. June 6, 2008) ............... - 13 -

*U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) ........................................................... - 13 -

*U.S. v. Howe*, 543 F.3d 128 (3d Cir. 2008) ........................................................................... - 13 -

*U.S. v. Peters*, 03-CR-211S, 2011 U.S. Dist. Lexis 7841 at *17 (W.D.N.Y. January 26, 2011) - 7 -

*U.S. v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999) ................................................................. - 8 -

*U.S. v. Trask*, 143 F. Supp. 2d 88, 92, n.2 (D. Mass. 2001) ..................................................... - 8 -

*U.S. v. Vigil*, 476 F. Supp. 2d 1231, 1235 (D.N.M. 2007) ..................................................... - 14 -

### <u>Statutes</u>

18 U.S.C. § 3553(a)(2) ............................................................................................................. - 1 -

18 U.S.C. § 371 ......................................................................................................................... - 5 -

### <u>Sentencing Guidelines</u>

§ 5K1.1 ..................................................................................................................................... - 11 -

§2B1.4(b)(1) ............................................................................................................................. - 10 -

§3B1.3 ....................................................................................................................................... - 6 -

§5K1.1 ...................................................................................................................................... - 11 -

5K1.1 ......................................................................................................................................... - 5 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                   11 Cr. 161 (JSR)

     - v. -

SON NGOC NGUYEN

                        Defendant.

-----------------------------------------------------------X

## SENTENCING MEMORANDUM ON BEHALF OF SON NGOC NGUYEN

### PRELIMINARY STATEMENT

       Son Ngoc Nguyen ("Nguyen") submits this sentencing memorandum in support of his request for a sentence of probation. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

       As set forth below, there are several factors that mitigate in favor of a sentence of probation. As the Government's letter of March 30, 2012, (the "Government's Letter"), makes clear, Nguyen's criminal conduct consisted of one stock trade on an "inside" stock tip given by Winifred Jiau ("Jiau") in which Nguyen lost approximately $7,000, one stock trade on an "inside" stock tip given by Stanley Ng ("Ng") in which Nguyen made a profit of approximately $3,200, and, on a single instance, providing Jiau with non-public information regarding the financial condition of Nvidia Corporation ("Nvidia"), the company at which he was employed. As the Government's Letter states, after providing Jiau with the inside information, he never provided or traded on inside information again and requested that Jiau never speak with him again.

       Furthermore, Nguyen has acknowledged and taken full responsibility for his illegal conduct. He has cooperated with the Government and provided them with substantial assistance.

His cooperation and trial testimony was a major reason for the conviction of Jiau and information he provided the Government led to the arrest and conviction of Ng. The Government has acknowledged Nguyen's cooperation and stated that a reduction in Nguyen's sentence is warranted in this case.

The Pre-Sentence Report ("PSR") suggests a guideline range of 6-12 months imprisonment. However, this fails to take into account Nguyen's substantial cooperation and is based on an improper calculation of the applicable Total Offense Level. For example, despite Nguyen's minimal involvement in the larger criminal conspiracy which is underscored by the fact that Nguyen's own PSR is filled with information about which Nguyen had no knowledge, and the Government's acknowledgment that Nguyen's role consisted of the three aforementioned acts, the PSR fails to award and reduction based upon his minimal, or minor, role. Moreover, the 2-level increase for financial gain of over $5,000 is unsupportable considering Nguyen lost approximately $3,800 as a result of his trades. Finally, the 2-level increase for "abuse of trust" is improper where, as here, "an abuse of trust or skill is included in the base offense level or specific offense characteristic."

Given Nguyen's minimal role, the evidence that his illegal conduct was an isolated incident in an otherwise law-abiding life, the fact that he self-corrected and ceased engaging in criminal activity long before he was arrested, and that his substantial cooperation led to the convictions of Jiau and Ng, a term of imprisonment would not be warranted.

## **FACTUAL BACKGROUND**

Nguyen was a law-abiding citizen with no criminal history before committing the instant offense. In 1971, three months after he was born, his family fled Vietnam to escape war and bloodshed. His family escaped to Guam before being allowed into the United States as refugees. His family lived in Arkansas and Long Island, New York, before settling in San Jose, California.

- 2 -

Nguyen lived in this country as a legal resident from 1978 until he became a citizen on October 18, 1995. He graduated from the University of California at Davis in 1998 with a Bachelor Degree in economics. Since graduation, he has held several financial analyst positions including with Brocade Communications, Marvell Semiconductor, and Nvidia. After pleading guilty, Nguyen resigned from Nvidia and is currently working as a consultant.

Nguyen is married for over ten years and has three children. He has long been the primary wage earner in his household and helps support other family members as well. As his wife details in her letter to the Court (attached at Ex. A), even after being arrested, Nguyen continues to be a volunteer bible instructor at his local church. He is now a volunteer vice president at the church and, as his wife states, "I know he makes a difference in their lives because he receives many gifts of appreciation and compliments from parents and students."

Nguyen is a very dedicated father. His wife details how devoted he is to his children. It does not go unnoticed amongst his friends. One writes, (attached as Ex. B), "I wished I was as good a father as he is. He taught his son how to read, and reads with his 3 kids daily. I don't know how he finds the energy or time. It's obvious that his wife and kids are very dependent of him." Another friend states "[t]he love and time Son has provided to his family and friends is undoubtedly above the level of most people that I know. Son has been a model of what a family man should strive for in life." (Letter attaches as Ex. C).

Perhaps the letter that provides the most insight into Nguyen's character comes from his former supervisor at Nvidia. (Attached as Ex. D). He said that "[t]o say such behavior is 'out of character for Sonny', is a gross understatement. I've known him to be an honest individual who strives to do the right thing, both in his professional and personal life." What more can be said about someone's character that even after Nguyen violated the trust of Nvidia by divulging its non-public financial information, his former supervisor writes this Court to ask for leniency.

## A.   Nguyen's Minimal Role In The Conspiracy

Nguyen worked as a senior financial analyst at Nvidia from 2006 until 2011.  Sometime in 2007 he met Jiau who was a temporary employee in Nvidia's finance department.  They realized that they had a lot in common and quickly became friends.  As both of them had a business and economics background, they often talked about the economy and investing. Sometime in 2007, Jiau suggested that they form an "investment club" and trade on non-public information through her contacts at several other semiconductor companies.

Nguyen agreed to the arrangement.  At the time, he was struggling to support his wife and family.  His wife had only recently given birth to twins, and Nguyen felt pressure to earn extra income.  The first "inside" information that Jiau gave Nguyen was later in 2007 and involved the company Sandisk.  Nguyen promptly invested $24,000 but quickly lost $7,000. From that point forward, Nguyen never again traded on information given by Jiau.

Also in 2007, Nguyen introduced his friend Ng to Jiau.  Ng was employed at Nguyen's former employer, Marvell Semiconductor ("Marvell").  On a single occasion, Ng told Nguyen and Jiau, prior to the release of Marvell's quarterly report, that things were looking good at Marvell.  Nguyen invested $14,000 and earned profits of approximately $3,200.

Thereafter, Jiau left her temporary position at Nvidia but she remained friends with Nguyen.  However, Nguyen never again made any trades based on insider information.  In the summer of 2008, Jiau began to incessantly call Nguyen.  Nguyen ignored the calls for a period of time, but Jiau was persistent.  Eventually, Nguyen spoke with Jiau who informed him that she would be killed if he did not provide her with Nvidia's non-public information.  Nguyen eventually relented and provided Jiau the information on condition that she never called him again.  As the Government acknowledged, this was the only instance Nguyen ever provided

anyone with non-public information.  Nguyen committed no further criminal acts and he terminated his friendship with Jiau.

While the PSR details the actions of a litany of people including Donald Longueuil, Noah Freeman and Samir Barai, Nguyen played no role in their actions.  His involvement in the conspiracy was restricted to his minimal interactions with Jiau and Ng.

**B.     Nguyen's Cooperation With The Government**

Nguyen was contacted by the Federal Bureau of Investigations regarding his involvement with Jiau.  After retaining counsel, Nguyen agreed to meet with the Government in proffer sessions which eventually resulted in a cooperation agreement.  In connection with the cooperation agreement, Nguyen pled guilty to a one-count information alleging a conspiracy to commit wire fraud and securities fraud through insider trading, in violation of 18 U.S.C. § 371.

Pursuant to the cooperation agreement, Nguyen provided the Government with honest and accurate information concerning his involvement with Jiau and Ng.  During his guilty plea, Nguyen acknowledged his role as well as the role of Jiau.  When asked by the Court who else was involved in the conspiracy, Nguyen unflinchingly named his friend Ng.  Thereafter, Nguyen testified at Jiau's trial, and, as acknowledged in the Government's Letter, Nguyen's testimony was crucial in securing Jiau's conviction.

After Jiau was convicted, Nguyen continued to cooperate with the Government and provided Agent Michael Brown of the FBI with further information regarding Ng.  Ng was arrested, pled guilty, and is awaiting sentencing by this Court.

As a result of Nguyen's honest and forthright cooperation, the Government requested a reduction in Nguyen's sentence and asked the Court to sentence Nguyen in light of the factors set forth in Section 5K1.1 of the Guidelines.

## ADVISORY GUIDELINE RANGE

- 5 -

The PSR calculates a total offense level of 10 and a Criminal History Category of I.  The Offense Level Computation consists of a base offense level of 8, with a two-level increase based upon the specific offense characteristics, a two-level increase because Nguyen purportedly was in a position of private trust, and a two-level decrease based upon his acceptance of responsibility.  According to the PSR, the Guideline range is 6-12 months.

As demonstrated below, the PSR artificially enhances the total offense level, fails to consider Nguyen's minimal role in the conspiracy, and does not take into account Nguyen's substantial cooperation.

**A.      Adjustment for Role in the Offense**

*1.        Improper Enhancement For Abuse of Trust*

The PSR provides a two-level increase pursuant to §3B1.3 because "Nguyen was a senior financial analyst at Nvidia whose position gave him access to nonpublic information regarding Nvidia's earnings statements."  Because he had a fiduciary obligation to not disclose the information, the PSR argued, he abused a position of trust in violation of his confidentiality agreement with Nvidia.  However, Nguyen did not have the type of professional or managerial discretion contemplated by the Sentencing Guidelines.  Moreover, the proposed two-level increase is unsupportable where, as here, "an abuse of trust or skill is included in the base offense level or specific offense characteristic."  §3B1.3.  In response to Nguyen's objections, the PSR still insisted on this enhancement because Nguyen did not learn the information by happenstance.  However, the threshold used by the PSR would apply to almost every person implicated in an inside trading scheme.  This was not the intent of the Guidelines.

The two-level enhancement for abuse of trust "is characterized by professional or managerial discretion."  *U.S. v. Peters*, 03-CR-211S, 2011 U.S. Dist. Lexis 7841 at *17 (W.D.N.Y. January 26, 2011).  It is intended to apply to "persons holding such positions

- 6 -

ordinarily [] subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." *U.S. v. Adams*, 03- CR-1368, 2006 U.S. Dist. LEXIS 5606, at *19 (E.D.N.Y. January 30, 2006). The Guidelines themselves indicate that this adjustment in intended to apply in cases such as "an embezzlement of a client's funds by an attorney serving as guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician." *Peters*, 2011 U.S. Dist. LEXIS at *18.

Nguyen did not have discretionary authority. He was not an executive and did not have substantial discretion at Nvidia. He was a mid-level financial analyst who had the same, or less, access to information on Nvidia's computer systems than any other employee. He is precisely the type of defendant for which the Guidelines explicitly states the enhancement should not apply. Moreover, this enhancement could only feasibly apply to the single instance where Nguyen provided Jiau with Nvidia's information. For the other two incidents, where Nguyen merely received information from Jiau and Ng, he should be considered the "ordinary tipee," to which the enhancement does not apply. *See U.S. v. Trask*, 143 F. Supp. 2d 88, 92, n.2 (D. Mass. 2001).

In addition, even if Nguyen was imbued with the special trust to which the Guidelines refer, the enhancement would still be inappropriate because the crime of insider trading as it relates to a financial analyst pre-supposes a breach of trust. Simply put, the only way a person like Nguyen could commit insider trading was because he had access to material, non-public information. *See U.S. v. Corbin*, 729 F. Supp. 2d 607, 613 (S.D.N.Y.). As such, the enhancement is improper because the abuse of trust is already contemplated in the base level offense.

     2.     *The PSR Fails to Account for Nguyen's Minimal Participation*

The Guidelines provide for a four-level decrease for a defendant who plays a "minimal role" in the illegal activity, a two-level decrease for a defendant who plays a "minor role," and a three-level decrease for someone in between minimal and minor. The relevant inquiry is whether "the defendants conduct [was] 'minor' or 'minimal' compared to the average participant in such a crime. *U.S. v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999). These reductions are intended to apply to defendant "who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge…of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." *U.S. v. Cotto-Lopez*, 379 Fed. Appx. 101, 103 (2d Cir. 2010).

Here, there is no question that Nguyen should qualify for either a four-level reduction as a "minimal participant," a two-level decrease as a "minor participant," or a three-level decrease for falling somewhere in between. Nguyen has acknowledged three distinct incidents of illegal conduct. He traded (and lost money) based upon "insider" information provided by Jiau, traded based upon inside information provided by Ng, and on a single occasion, provided non-public information about Nvidia to Jiau. This is extremely minor when compared to the typical insider implicated in a conspiracy to commit insider trading.

Moreover, Nguyen was entirely unaware of the larger insider trading scheme. He had no knowledge of the actions taken by people such as Barai, Freeman and Longueuil. Indeed, while he knew providing the information to Jiau was illegal, he assumed that Jiau was using the information for personal gain and had no idea that Jiau was a participant in a larger network. Nguyen's minimal role is underscored by the fact that in his own PSR's description of the insider trader scheme, he is hardly even mentioned.

The PSR justifies the refusal to grant a reduction for a minimal or minor role because providing the inside information was essential to the offense. However, this is hardly a

- 8 -

reasonable justification. A role can be both essential and minimal or minor. Indeed, the role of a drug mule is essential to the narcotics trade, but when compared to the people making, trafficking and profiting from the drug trade, the drug mule's role pales in comparison.

The guidelines make clear that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Cotto-Lopez*, 379 Fed. Appx. at 103 citing § 3B1.2. Examples provided by the guidelines include a drug mule, and a person engaged in a fraud scheme whose personal benefit pales in comparison to the larger scheme.

Here, Barai, Longueuil and Freeman created an expert networking firm that used other sources to gather information from contacts at public companies. They paid for the information, made millions of dollars from the trades, and destroyed evidence to obstruct justice. Likewise, Jiau made millions of dollars in trading on inside information and selling information that she obtained from contacts at public companies. In contrast to the large and profitable scheme, Nguyen provided inside information on one occasion after being pestered by Jiau. He had no knowledge that there was a larger scheme and did not know any of the participants other than Jiau and Ng.

Nguyen is a textbook example of the Guideline's minimal participant. Especially compared to the other persons involved in this conspiracy, he is among the least culpable criminal defendants. He should therefore qualify for a reduction of four levels. *Cotto-Lopez*, 379 Fed. Appx. at 103. Should the Court decline to do so, Nguyen should, at the very least, be awarded a two-level reduction because while his role could not be described as minimal, he was less culpable than other defendants. *Id.*

**B.      The Loss Did Not Exceed $5,000**

The Guidelines provide for a two-level increase if the gains as a result of the insider trading scheme were greater than $5,000, but less than $10,000. If the gains are less than $5,000, no increase is applied. §2B1.4(b)(1) and §2B1.4(b)(1). Here, the PSR provides for a two-level increase based upon a $6,464 net gain between Nguyen and Jiau as a result of the trade in Marvell stock. However, this calculation fails to explain why Jiau's profit from trading on information provided by Ng should be properly attributed to Nguyen and fails to account for the approximately $7,000 Nguyen lost in his trade on Sandisk.

As the Government acknowledged, the only profit Nguyen earned as a result of his participation in the insider trader scheme was approximately $3,200 from his trade in Marvell stock based upon the information provided by Ng. He lost close to $7,000 in his trade on Sandisk. Thus, standing alone, Nguyen's gains are far less than the $5,000 threshold required for the two-level increase. The PSR, however, only includes the $3,200 profit and adds to it the approximately $3,200 that Jiau earned as a result of the information provided to her by Ng. However, it is improper to attribute Jiau's profit from trading on Ng's inside information to Nguyen. The calculation of the profit should be limited to the amount of loss directly attributed to Nguyen's criminal conduct or the amount gained stemming directly therefrom. The profit gained by Jiau does not relate to Nguyen's criminal conduct, but to Ng's.

If the Court is to consider the profit that Jiau made as a result of information provided by Ng, it is only fair that it also consider the approximately $7,000 loss that Nguyen suffered as a result of his trade in Sandisk based upon the information provided him by Nguyen. If the Court were to consider these losses in its calculation, even if it counts Jiau's profits Nguyen still suffered a net loss.

## NGUYEN SHOULD BE GRANTED A DOWNWARD DEPARTURE

A.      **Nguyen Provided Substantial Assistance To The Government**

No matter what adjusted offense level is utilized by the Court, there is no doubt that Nguyen should be granted a substantial downward departure based upon the Government's Letter pursuant to §5K1.1 of the Guidelines. Even if the Court accepted the PSR's adjusted offense level of 10, a minimal two-level reduction would place Nguyen in Zone A, and make him eligible for a sentence of probation. Based upon Nguyen extensive cooperation, he is entitled to far more than a two-level reduction.

Pursuant to § 5K1.1, the Court should evaluate the significance and usefulness of Nguyen's cooperation, the reliability of the information he provided, the nature and extent of his cooperation, and the timeliness of his assistance.

Early in this case, while other parties were refusing to cooperate, Nguyen agreed to cooperate with the Government. He attended several proffer sessions where he fully disclosed all of his involvement with Jiau and Ng. In connection with his cooperation, Nguyen acknowledged his wrongdoing and pled guilty to a single count of wire fraud and securities fraud through insider trading. At his guilty plea, he admitted that he agreed with Jiau and Ng to engage in insider trading and admitted to providing them with information about Nvidia's non-public financial information.

Following his guilty plea, Nguyen served as a key witness at the trial of Jiau. As the Government's Letter acknowledged, Nguyen's testimony eliminated one of Jiau's key defenses and helped lead to her conviction. Even after Jiau's trial, Nguyen continued to cooperate with the Government and provided the FBI with information about his friend Ng that helped lead to his arrest, prosecution and conviction.

The Government's Letter acknowledged that Nguyen has been honest and straightforward. He did not exaggerate or speculate and the information he provided was

corroborated through other sources. He has acknowledged his wrongdoing, expressed remorse and fully and unwaveringly complied with his obligations under the cooperation agreement.

Based upon Nguyen's timely, valuable and honest cooperation, the Court should grant Nguyen a further reduction which only strengthens his argument for a non-incarceration sentence.

### B.    Nguyen's Conduct Was Aberrant

Nguyen lived a law abiding life until the instant offense which occurred in his mid-thirties. He was a respected financial analyst, an active member of the community, a volunteer bible teacher and a dedicated husband and father. While it offers no excuse, his criminal conduct was brought on by anxiety over finances after his wife gave birth to twins, and was largely influenced by psychological pressure put on him by Jiau. As his former supervisor stated, his offense was completely uncharacteristic when viewed in the context of his entire adult life. The Court would be justified in granting a variance based on the aberrant nature of his conduct. *See, e.g. U.S. v. Howe*, 543 F.3d 128 (3d Cir. 2008) (variance based on "isolated mistake" in otherwise long and entirely upstanding life); *U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (defendant was a "law abiding citizen who [did] an incredibly dumb thing"); *U.S. v. Davis*, 07 CR 727, 2008 U.S. Dist. LEXIS 44030 (S.D.N.Y. June 6, 2008) (defendant was a first time offender who worked throughout his marriage to provide for his wife and children and whose offense was prompted by economic pressures).

### C.    Nguyen Has Been Sufficiently Deterred

One of the reasons for incarceration is to deter the defendant from committing any future criminal acts. Here, additional punishment is not needed in order to provide that deterrence. It is

- 12 -

uncontested that long before Nguyen was arrested for insider trading, he had already self-corrected. After making two trades based on insider information, he voluntarily ceased making such trades. After Jiau berated him into providing the non-public information about Nvidia, Nguyen ended their friendship and insisted that she never call him again.

Nguyen has suffered significantly from his arrest and conviction. He lost a well-paying position at Nvidia, and will have trouble finding equal employment with a felony conviction for insider trading on his record. Furthermore, the larger case was the subject of extensive media coverage and the fact of his arrest and conviction was detailed in prominent newspapers and business periodicals. *See, e.g. U.S. v. Vigil*, 476 F. Supp. 2d 1231, 1235 (D.N.M. 2007) (finding variance appropriate where defendant was collaterally punished by loss of reputation, widespread media coverage, and emotional toll of public trial).

Incarceration will not provide any greater deterrent than Nguyen has already experienced. Furthermore, as Nguyen's likelihood of recidivism is already extremely small, incarceration is not needed to reduce the likelihood of recidivism. As such, a sentence of probation is a more than sufficient sentence.

## CONCLUSION

Mr. Nguyen respectfully requests that this Court, when constructing its sentence, consider the limited nature of his involvement in the larger conspiracy, his otherwise law-abiding life, his extensive and valuable cooperation with the Government, and the potential impact on his wife and young children. Based upon the Guidelines, and the Government's Letter, Nguyen respectfully requests that the Court sentence him to a period of probation.

Nguyen respectfully reserved the right to raise additional sentencing arguments, if necessary, at sentencing.

Dated: April 5, 2012

/s/ Douglas Schneider
DOUGLAS M. SCHNEIDER, ESQ. (DS 7206)
SUMMERS & SCHNEIDER, P.C.
147 Prince Street
Brooklyn, NY 11201
(917) 512 - 6633
Attorneys for Defendant